1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8

FARHANG OSHIDARY,                                 No. C 12-2092 SI

9

Petitioner,                        **ORDER DENYING PETITION TO
                                                          VACATE CONTRACTUAL
10    v.                                                  ARBITRATION AWARD**

11   GRACE PURPURA-ANDRIOLA, TRUSTEE
     FBO GRACE PURPURA-ANDRIOLA LIVING
12   TRUST AND OLGA MICHEL BASIL,

13                 Respondents.
                                                    /
14

15          Petitioner Farhang Oshidary filed a petition to vacate a Financial Industry Regulatory Authority

16   ("FINRA") Arbitration Award issued on February 10, 2012 (the "Award") in FINRA Case Number 08-

17   2259, titled *Pooroushasb and Parima Parineh, et al. v. Farhang Oshidary, et al.* (the "Arbitration").

18   Respondents Grace Purpura-Andriola, Trustee FBO Grace Purpura-Andriola Revocable Living Trust

19   ("Andriola") and Olga Michel Basil (collectively, "Respondents") filed an opposition on May 7, 2012,

20   and Petitioner filed a reply on May 14, 2012.  The vacatur petition is set for hearing on June 15, 2012.

21   Pursuant to Civil Local Rule 7-1(b), the Court finds the petition suitable for resolution without

22   argument, and hereby VACATES the hearing.  Having considered the papers submitted, the Court

23   hereby DENIES the petition.

24

25                                              **BACKGROUND**

26          The underlying dispute in this case arises from Oshidary's investment advice to Andriola, Basil,

27   and others given while Oshidary was a broker at the Menlo Park office of Smith Barney, now Citigroup

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Global Markets, Inc ("Citigroup").[1]  In 2001, according to the underlying Statement of Claims filed with FINRA, Oshidary solicited Andriola and others to loan money to Blue Controls Technologies, Inc. ("BCT"), formerly known as Ahsoon Technologies, Inc.  Pet'n to Vacate, Ex. A ("Statement of Claims"), ¶ 16. Oshidary allegedly made a variety of false representations about the health and stability of BCT, including that BCT was in the final stages of finalizing a $6,000,000 contract with IBM.  *Id.* ¶ 22.  BCT's condition was, in fact, dire and the revenue to be earned from its prospective contract with IBM totaled less than $1,000,000.  *Id.* ¶ 29.  Based on Oshidary's advice, Andriola, a retired school teacher who kept her entire account portfolio under Oshidary's management at Smith Barney, withdrew funds from her account and used those funds to make a loan to BCT in the amount of $250,000.  *Id.* ¶¶ 25, 26.  The loan was executed on April 6, 2001, and the note originally scheduled repayment for July 6, 2001.  Kelly Decl., Ex. A.  The note was later amended with a new payable date of April 6, 2004. Resp.'s Opp. at 10.  Andriola was never paid back for her loan.  *Id.* at 2.

Andriola and several other claimants filed suit against Oshidary and Citigroup in California Superior Court on August 10, 2007.  The Superior Court ordered the case to FINRA Arbitration.  The Arbitration Statement of Claims was filed on July 23, 2008 against both Oshidary and Citigroup, alleging breach of fiduciary duty, failure to supervise (against Citigroup f/k/a Smith Barney only), intentional misrepresentation, negligent misrepresentation, conspiracy, and breach of contract.  Oshidary filed a number of counterclaims against the claimants for harassment, interference with contractual relations, defamation, and extortion.  Baldwin Decl., Ex. C (the Feb. 10, 2012 "Arbitration Award") at 3.

The FINRA Arbitration Panel (the "Panel") held three hearing sessions, on December 6-10, 2010, July 11-15, 2011, and December 5-9, 2011.  Following the close of the claimants' case in chief, heard during the first two sets of hearing sessions, the Panel granted Citigroup's request for dismissal of all claims against it.  The Panel also dismissed all claims against Oshidary, except for the claims for breach of fiduciary duty brought by Andriola, Davoudis, Mashayekhs, Harirchi, and Basil.  Notably,

---

[1]The Arbitration also involved the claims of Pooroushasb Parineh, Dr. Khosrow Jamshidi, John Davoudi, Mike Mashayekh, and Majid Harirchi, all of whom invested money with BCT based on Oshidary's advice.  Statement of Claims, ¶ 24.  They settled their claims prior to the issuance of the Award.

the Panel denied Oshidary's request for dismissal for violation of the statute of limitations.

On November 14, 2011, Oshidary filed a motion to dismiss the remaining claim for breach of fiduciary duty. During the hearing sessions conducted December 5-9, 2011, the Panel "considered the positions of the parties regarding Respondent Oshidary's Motion to Dismiss the remaining Claimants Andriola [] and Basil on the basis of the statute of limitations and failure to establish a claim based on breach of fiduciary duty. The Panel denied the motion." Arbitration Award, at 7. On December 5, 2011, at the outset of the final hearing sessions, the Davoudis, the Mashayeks, and the Harirchis settled their claims with Oshidary.

On February 10, 2012, the Panel issued its Arbitration Award. The Panel found that Oshidary was liable for breach of fiduciary duty and owed to Andriola $250,000 plus 7% interest from April 1, 2001, and owed to Basil $120,000 plus 7% interest from January 1, 2005. *Id.* The Panel did not award Oshidary compensation for any of his counterclaims.

On April 26, 2012, Oshidary filed the instant petition to vacate the arbitration award on a number of grounds. On May 7, 2012, Andriola and Basil filed an opposition, and also a request for entry of judgment on the Award pursuant to 9 U.S.C. § 9.

## LEGAL STANDARD

Pursuant to Section 9 of the Federal Arbitration Act ("FAA"), if the parties have agreed "that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then "any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10 of the FAA sets forth the circumstances under which a court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

1    (4) where the arbitrators exceeded their powers, or so imperfectly executed
2    them that a mutual, final, and definite award upon the subject matter
     submitted was not made.

3  9 U.S.C. § 10(a).

4    The Court may vacate an award where the arbitrators' decision is in manifest disregard of the

5  law. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414–15 (9th Cir. 2011); *see also*

6  *Poweragent, Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) ("[A]n

7  arbitration award may be vacated only if it is completely irrational or constitutes manifest disregard of

8  the law."). Manifest disregard of the law means "something beyond and different from a mere error in

9  the law or failure on the part of the arbitrators to understand and apply the law." *Collins v. D.R. Horton,*

10  *Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quotation omitted). Rather, "[i]t must be clear from the record

11  that the arbitrator recognized the applicable law and then ignored it." *Comedy Club, Inc. v. Improv West*

12  *Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009). "Moreover, to rise to the level of manifest disregard [t]he

13  governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly

14  applicable." *Collins*, 505 F.3d at 879–80 (quotation and emphasis omitted). The party moving to vacate

15  the award bears the burden of proof. *Collins*, 505 F.3d at 879; *D.H. Blair & Co. v. Gottdiener*, 462 F.3d

16  95, 110 (2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the

17  showing required to avoid confirmation is very high.").

18

19                                              **DISCUSSION**

20    Oshidary has four theories under which he believes the Award must be vacated. First, he argues

21  that the Chairman of the Panel failed to disclose information that might preclude him from being

22  impartial in violation of California Civil Procedure Code § 1281.9. Second, he argues that the Panel

23  manifestly disregarded the law by acting without jurisdiction over Andriola's claims, which were barred

24  by the "six year rule" regarding arbitration eligibility. Third, he argues that the breach of fiduciary duty

25  claim was barred by the statute of limitations under California law. Fourth, he argues on the merits that

26  respondents failed to establish the elements of breach of fiduciary, particularly in light of the Panel's

27  dismissal of the negligent misrepresentation, intentional misrepresentation, breach of contract, and

28  conspiracy claims. Respondents argue that the Court should enter judgment on the award pursuant to

4

1  9 U.S.C. § 9.

2      The parties' arguments will be addressed in turn.

3

4  **1.      California Civil Procedure Code § 1281.9**

5      California Civil Procedure Code § 1281.9, subdivision (a), imposes on arbitrators a duty to

6  "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the

7  proposed neutral arbitrator would be able to impartial."  Oshidary posits that the Chairman of Panel,

8  Herbert Schwartz, violated this rule by failing to disclose that he acted as counsel in a case against

9  CitiCorp/Citibank, now known as Citigroup, one of the defendants in the underlying dispute. *See San*

10 *Franciscans for Reasonable Growth v. City and County of San Francisco and CitiCorp/Citibank NA*,

11 193 Cal. App. 3d 1545 (Cal. Ct. App. 1st 1987). *San Franciscans for Reasonable Growth,* a 1982 case,

12 involved a challenge to the City of San Francisco's certification of Environmental Impact Reports for

13 two projects sponsored by CitiCorp/Citibank.  *Id.* at 1546.  Mr. Schwartz is listed as counsel for

14 plaintiff. *Id.*  Prior to the instant arbitration, Mr. Schwartz gave a disclosure statement listing his prior

15 employment, education, training, and all entities that he is a member of, or has arbitrated or mediated

16 for.  *See* Baldwin Decl., Ex. D.  He did not list parties for whom he was previously counsel, including

17 plaintiffs in *San Franciscans for Reasonable Growth.*

18     The California Supreme Court analyzed § 1281.9 in *Haworth v. Superior Court*, 50 Cal. 4th 372

19 (2010).  *Haworth* involved arbitration of a female patient's claim that her physician was negligent in

20 performing cosmetic surgery on her lip.  The arbitrator, a former judge, found for the physician.  The

21 plaintiff moved for vacatur of the decision on the basis that the arbitrator had not disclosed prior to

22 arbitration that "10 years earlier, he received a public censure [as a judge] based upon his conduct

23 toward and statements to court employees, which together created an overall courtroom environment

24 where discussion of sex and improper ethnic and racial comments were customary." *Haworth*, 50 Cal.

25 4th at 377.  The plaintiff's theory was that the censure should have been disclosed as a person aware of

26 it might reasonably entertain a doubt as to the arbitrator's ability to be impartial in a case involving a

27 woman's cosmetic surgery.  The superior court agreed and vacated the award; the California Supreme

28 Court then reversed and reinstated it.  The court noted the remoteness in time of the censure, the fact

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

that the censure did not involve the parties of the arbitration, and that the arbitrator was censured rather than removed from the bench, reflecting the Supreme Court's view that his conduct did not indicate he could not be fair to female litigants generally. *Id.* at 389-90. The court highlighted the importance of the link between the subject matter of the arbitration and the matter subject to disclosure, noting that "the subject matter of this arbitration was not such that the circumstance of gender was material, or that gender stereotyping was likely to enter into the decision made by the arbitrators" and that, "had the subject of the arbitration in the present case involved, for example, workplace sexual harassment, we might have come to a different conclusion concerning [the former judge's] obligation to disclose the public censure." *Id.*; *see Benjamin, Weill, & Mazer v. Kors*, 189 Cal. App. 4th 126, 685 (Ct. App. 2nd 2010) (discussing *Haworth*). The court confirmed the arbitrator's decision. *Id.*

This Court finds that the same outcome is warranted here. *San Franciscans for Responsible Growth* occurred more than 20 years ago. The subject matter is completely unrelated. *San Franciscans* complained of the city's certification of Environmental Impact Reports. The instant arbitration involved the provision of flawed investment advice. Both the date of the allegedly conflicting event and the subject matter are thus more remote than those presented in *Haworth*. The one link is the existence of the same party - Citigroup, f/k/a Citibank/CitiCorp. A corporation the size of Citigroup, however, is likely to appear in a broad swath of litigation involving any number of subject matters. The appearance of Citigroup as a single defendant in a case two decades earlier in an arbitrator's career would not cause a person to reasonably doubt the arbitrator's ability to remain impartial in an arbitration involving Citigroup.

Oshidary cites to *Benjamin, Weill & Mazer v. Kors*, 189 Cal. App. 4th 126 (Ct. App. 2nd 2010) in support of his argument. There, the California Court of Appeal, First District, reversed the Superior Court and vacated an arbitration award where the arbitrator was concurrently involved as an attorney in a suit similar to the underlying arbitration proceedings. In the underlying arbitration, Benjamin, Weill & Mazer ("BWM") sought attorneys' fees from Kors after defending Kors, a professional adoption facilitator, in a suit brought by one of Kors' clients. After the arbitration panel found in favor of BWM, Kors discovered that one of the arbitrators was currently acting as counsel for a law firm in a contemporaneous fee dispute, had personally argued the case in the Supreme Court six days after he

6

**United States District Court**
For the Northern District of California

1   presided over the arbitration, and had a website touting his experience "with the unique issues and

2   dynamics involved in claims against lawyers." *Id.* at 681.  The Court of Appeal found that vacatur was

3   warranted because the arbitrator was "extremely involved" in the defense of lawyers and law firms, the

4   same subject as the arbitration.  *Id.* (*citing Advantage Medical Services, LLC v. Hoffman*, 160 Cal. App.

5   4th 806, 818 (Ct. App. 4th 2008)).

6          The Court finds that *Kors* is inapposite.  The two key facts present there are missing here: (1)

7   the conflicting case was occurring concurrently with the arbitration, and (2) the subject matter was

8   directly related.  Here, the alleged conflict occurred more two decades ago, and was completely

9   unrelated to the subject of the arbitration.  Again, the existence of Citigroup as a defendant in an

10  unrelated, remote-in-time case would not "cause a person aware of [that] fact to reasonably entertain

11  a doubt that the proposed neutral arbitrator would be able to impartial."  § 1281.9(a).[2]  Oshidary's

12  petition for vacatur on these grounds is DENIED.

13

14  **2.      The Six Year Rule**

15         Oshidary argues that the Panel manifestly disregarded the law concerning FINRA Rule 12206(a)

16  by hearing Andriola's claims.  Rule 12206(a) provides:

17                 No claim shall be eligible for submission to arbitration under the Code where
                   six years have elapsed from the occurrence or event giving rise to the claim.
18                 The panel will resolve any questions regarding the eligibility of a claim under
                   this rule.

19

20  Oshidary argues that the "occurrence or event giving rise to the claim," is, as a matter of law, the

21  purchase date of the investment. Pet.'s Mem. at 9 (*citing Edward D. Jones & Co v. Sorrells*, 957 F.2d

22  509 (7th Cir. 1992); *Dean Witter Reynolds, Inc. v. McCoy*, 1995 WL 699619 (6th Cir. 1995); *Castellano

23  v. Prudential-Bache Securities, Inc.*, 1990 WL 87575 (S.D.N.Y. 1990)).  Here, Andriola made the loan

24  on April 6, 2001.  The Statement of Claim at FINRA was filed on July 23, 2008, over six years later.

25  Oshidary argues that therefore, Andriola's claim was ineligible for FINRA arbitration.

26         An initial question exists as to whether eligibility under Rule 12206 is a question for the

27         [2]While it is not clear that the actual decisions of the arbitration panel should be part of the
28  § 1281.9(a) disclosure analysis, it should be noted that the Panel dismissed all claims against Citigroup,
    at least evincing impartiality on behalf of Mr. Schwartz.

1    arbitrators or for the court.  That question was analyzed in detail in *Mid-Ohio Securities Corp. v. Estate*

2    *of Lawrence Bursn*, 790 F. Supp. 2d 1263, 1270 (D. Nev. 2011) (Pro, J.).  Judge Pro noted that the rule

3    contains the provision that "[t]he panel will resolve any questions regarding the eligibility of a claim

4    under this rule."  It then surveyed court opinions that analyzed a variety of eligibility rules regarding

5    arbitration.  The court found that several courts have held that because the rules referred to "eligibility"

6    for arbitration, it was a question for the court.  *Id.* at 1270 (*citing Prudential Sec., Inc. v. Yingling,* 226

7    F.3d 668, 672 (6th Cir. 2000) (analyzing National Association of Securities Dealers ("NASD") Code

8    of Arbitration Procedure § 10304); *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d

9    474, 477-78 (10th Cir. 1996) (NAS Code of Arbitration Procedure § 15)).  However, other courts,

10   including the Ninth Circuit, concluded time limitation rules are procedural matters for the arbitrator to

11   decide.  *Id., citing O'Neel v. Nat'l Ass'n of Sec. Dealers, Inc.*, 667 F.2d 804, 807 (9th Cir. 1982)

12   (holding that whether a NASD rule requiring submission to arbitration within five years barred the

13   claims was a question for the arbitrators).  The *Mid-Ohio* court concluded that Rule 12206 is not a strict

14   rule of eligibility, but a question for the arbitrators more akin to a statute of limitations, and therefore

15   "the arbitrators were free to interpret the rule as they saw fit, including adding in tolling provisions or

16   a discovery rule."  *Id.* at 1271-72.

17           This Court agrees with that analysis and adopts it here.  The Panel was free to interpret Rule

18   12206 as it saw fit, in particular with respect to the triggering date, i.e. the "occurrence or event giving

19   rise to the claim."  FINRA Rule 12206.  It appears from a partial transcript of one arbitration hearing

20   appended to Petitioner's Reply Brief that the Panel believed the triggering event was a 2006 board

21   meeting "in which the claimant's were informed that their loans and monetary investments into the

22   company weren't worth anything."  Baldwin Reply Decl., Ex. A at 8.  It was not manifest disregard of

23   the law to so find.  There is no "well defined, explicit, and clearly applicable" law regarding whether

24   the trigger date must be the date of investment.  *See Collins*, 505 F.3d at 879–80.  To the contrary, as

25   the *Mid-Ohio* court found, there is a split of authority.  *Compare Dean Witter Reynolds, Inc. v. McCoy*,

26   70 F.3d 1271 (6th Cir. Nov. 27, 1995) ("Adopting the Investors' interpretation would clearly undermine

27   the intention of § 15 calling for a six-year time limit on the arbitrability of claims, and would enable the

28   Investors to control the running of the time limit while they reaped the benefits of the investments about

which they would later complain.") *with Merrill Lynch v. Cohen*, 62 F.3d 381, 385 (11th Cir. 1995) ("If the Cohens prove that Merrill Lynch reported false values for their investments through bogus statements, then Merrill Lynch's act of sending the false statements, rather than the initial purchase of the investments, may be the occurrence or event giving rise to their claims.").

Indeed, the fact that the investments at issue here were loans provides support for the Panel's decision to not choose the purchase date as the triggering event. Unlike other types of investments, loans have an agreed-upon return on a date certain. The investor likely will not know whether repayment will occur until that date arrives. The concern presented by the *Dean Witter* court, that an investor would control the running of the time limit while they "reaped the benefits of the investments about which they would later complain," is mitigated with respect to loans: the "benefit" to be reaped either will or will not occur on the payoff date. In this case, $250,000 principal and interest were due to Andriola well within the six years prior to her filing of the claim. It was within the Panel's discretion to choose such a later date – such as when it became clear that the loan would not be repaid – as the date triggering the six year time limitation. At the very least, it was not manifest disregard for the law. Oshidary's petition for vacatur on this ground is DENIED.

### 3.       Statute of Limitations/Breach of Fiduciary Duty

Oshidary argues that Andriola's claim for breach of fiduciary duty was barred by the statute of limitations. He also argues on the merits that Andriola and Basil failed to establish breach of fiduciary duty because Oshidary owed no duty to them; that if Oshidary did owe such a duty, it was not fiduciary in nature; that if there was a fiduciary duty, there was no breach of the duty because all misrepresentation, negligence, and conspiracy claims were dismissed; and that even if there was a breach, there was no causation between the supposed breach and damages.

Courts may not reverse an arbitration award even in the face of an erroneous interpretation of the law. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (*citing A.G. Edwards v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992)). "Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Id.* (*citing San Martine Compania De Navegacion*, 293 F.2d 801. In other words,

**United States District Court**
For the Northern District of California

1    the burden is on petitioner seeking vacatur to demonstrate that the Panel understood the law, but ignored

2    it.  *Id.*;  *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("A party moving to

3    vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is

4    very high.").

5          The Court finds that Oshidary has failed to meet his burden to demonstrate that the Panel

6    manifestly disregarded the law.  He provides no transcripts, decisions, declarations, or even the parties'

7    briefs from the arbitration to show that the Panel understood the law but disregarded it.[3]  He simply

8    makes legal arguments that were presented during the arbitration.  The Panel considered Oshidary's

9    arguments; in the Arbitration Award, the Panel states that,

10             During the hearing sessions conducted December 5-9, 2011, the Panel
               considered the positions of the parties regarding Respondent Oshidary's
11             Motion to Dismiss the remaining Claimants Andriola Revocable Living Trust
               and Basil on the basis of the statute of limitations and failure to establish a
12             claim based on breach of fiduciary duty.  The Panel denied the motion.

13   Baldwin Decl., Ex. C (Arbitration Award) at 7.  However, Oshidary does not provide the Court with any

14   information about the arguments made to the Panel, let alone their decision.  Without any substance of

15   the arbitration record before it, the Court cannot find that the Panel "understood and correctly stated the

16   law, but proceeded to disregard the same."  *Collins*, 505 F.3d at 879.  Oshidary's petition for vacatur

17   on these grounds is DENIED.

18

19   **4.    Entry of Judgment**

20          In their opposition to Oshidary's petition, Respondents request that the court enter judgment

21   confirming the award pursuant to 9 U.S.C. § 9.  Respondents note that they have petitioned California

22   State Court for entry of judgment "as the originating place where suit was brought, [but] they also accept

23   rules of federal preemption and this court as a court of competent jurisdiction chosen by Mr. Oshidary."

24   Section 9 provides that,

25             If the parties in their agreement have agreed that a judgment of the court shall
               be entered upon the award made pursuant to the arbitration, and shall specify
26             the court, then at any time within one year after the award is made any party

27   ───────────────────

28          [3]The only partial transcript provided addresses the Rule 12206 claim, discussed *supra*; it does
     not address the statute of limitations or the breach of duty arguments.

10

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.  Because the Court has denied Oshidary's vacatur of the award, the Court finds that confirmation of the award is appropriate.  The award is therefore CONFIRMED.  The Court will enter judgment by separate order, once Respondents confirm to this Court that they have withdrawn their parallel request to the State Court.

## CONCLUSION

Petitioner's petition for vacatur of the February 10, 2012 Award in FINRA Case Number 08-2259 is DENIED.  The Award is CONFIRMED.

**IT IS SO ORDERED.**

Dated: June 12, 2012

_____
SUSAN ILLSTON
United States District Judge

11